# United States Court of Appeals for the Federal Circuit

---

**TRIMED, INCORPORATED,**
*Plaintiff-Appellant,*

**v.**

**STRYKER CORPORATION,**
*Defendant-Appellee.*

---

2009-1423

---

Appeal from the United States District Court for the Central District of California in case no. 06-CV-1918, Judge Manuel L. Real.

---

Decided: June 9, 2010

---

LEE F. GROSSMAN, Niro, Scavone, Haller & Niro, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief were MARK M. GROSSMAN, Grossman Law Offices, of Chicago, Illinois; and SEAN M. KNEAFSEY, Kneafsey, Tostado & Associates LLP, of Los Angeles, California.

GREGORY J. VOGLER, McAndrews, Held & Malloy, Ltd., of Chicago, Illinois, argued for defendant-appellee. With him on the brief were ROBERT A. SURRETTE and STEPHANIE F. SAMZ.

---

Before LOURIE, LINN, and MOORE, *Circuit Judges.*

LINN, *Circuit Judge.*

This patent infringement action returns to us for a second time after having been previously appealed and remanded on claim construction and infringement questions in *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256 (Fed. Cir. 2008) ("*TriMed I*"). In the present appeal, TriMed, Incorporated ("TriMed") challenges a decision of the United States District Court for the Central District of California granting summary judgment of invalidity of the asserted claims of U.S. Patent No. 5,931,839 ("the '839 patent") in favor of Stryker Corporation ("Stryker"). Because the district court improperly resolved genuine issues of material fact in favor of Stryker and because reassignment is advisable to preserve the appearance of justice, we *reverse* and *remand* with an instruction to reassign this matter to a different judge.

## I.    BACKGROUND

### A.  The '839 patent

TriMed is the owner of the '839 patent, which covers an implantable device used to set bone fractures, such as a type of wrist fracture known as a Colles' fracture. The '839 patent describes four prior art methods of setting a Colles' fracture, two of which merit discussion here. In the first method, referred to as open reduction and internal fixation, a surgeon cuts open the wrist, places the fractured bones back in their original position (i.e., reduces the bone fractures), and "appl[ies] plates, screws, and pins as needed." '839 patent col.2 ll.6-8. This usually involves the surgeon opening the skin above the fracture and positioning a metal plate across the fracture. The surgeon then attaches the plate to both the stable and

fractured bone fragments with screws. The open reduction technique has several drawbacks. First, the method requires the surgeon to make screw holes in the fractured bone, which can lead to further fragmentation. Second, if the fractured bone is small or osteoporotic, the screw threads cannot attach the screw to the bone. Finally, rotation of the screw into the fractured fragment causes compression across the fracture, which may cause the fragment to shatter.

The second method, known as percutaneous pinning, involves inserting a first end of one or more small pins called Kirschner wires (also referred to as "K-wires"), through a fractured bone fragment across the fracture and into a stable bone fragment, leaving the other end of each pin extending out of the fractured bone fragment. Because a pin is less likely to weaken a fragmented bone, pins are better suited than screws for fixating small or osteoporotic bone fragments. However, because pins have a tendency to bend or be displaced, doctors generally apply a cast to immobilize the wrist and elbow of the patient while the bone heals, subjecting the patient to the stiffness and loss of function associated with the use of casts.

The '839 patent describes an implantable device that includes three kinds of components: screws, pins, and a plate with screw holes on one end of the plate and pin holes on the opposite end thereof. The patent explains that, unlike prior art techniques of setting fractures, the invention permits "rigid fixation of fracture fragments while allowing immediate motion of a joint." '839 patent col.3 ll.22-43. Figures 1 and 5 of the '839 patent are illustrative of an embodiment of the device:



Fig. 1

Fig. 5

In one method of implanting the device, a surgeon opens the skin above a fracture 11, slides a pin 8 through a fractured bone fragment 9 across the fracture 11, and embeds the pin 8 in a stable bone fragment 10, leaving the other end of the pin 8 extending above the fractured fragment 9. The surgeon then positions a plate 1 across the fracture 11 such that the end of the pin 8 extending above the fractured fragment 9 rests in a pin hole 3. As we observed in *TriMed I*, the hole 3 stabilizes the projecting end of the pin 8 against movement in the plane of plate 1 and allows the pin 8 to slide axially through the plate 1 while preventing compression across the fracture 11. 514 F.3d at 1260. The surgeon places the opposite end of the plate 1 over the stable bone fragment 10 and attaches the plate 1 to this fragment by inserting screws 7 through screw holes 2 in the plate 1 into the stable bone fragment 10.

B.  Prior Proceedings

On March 30, 2006, TriMed initiated the underlying action against Stryker, asserting that a wrist fixation device manufactured and sold by Stryker infringes claims 1, 2, and 7-11 of the '839 patent.  Claim 1, the independent claim from which the other asserted claims depend, reads as follows:

> 1. An implantable device for fixation of at least one fractured bone fragment to a stable bone fragment, said implantable device comprising an implantable plate having opposite end portions, fastening means for securing one end portion of said plate to stable bone, at least one fixation pin for penetrating said at least one fractured bone fragment, and traversing a fracture for entering the stable bone fragment and for being secured therein at a stable fixation site at a far end of said fixation pin, the opposite, near end of said pin being adapted for extending from the fractured bone fragment, said near end of said pin being engageable in one of a plurality of holes in the other end portion of the plate, said holes in said plate providing means for allowing the pin to slide axially therein but preventing compression across the fracture, and stabilizing said near end of the pin against displacement in the plane of the plate.

'839 patent col.6 ll.17-32.

After the completion of discovery, the district court granted Stryker's motion for summary judgment of noninfringement, simply signing Stryker's Statement of Uncontroverted Facts and Conclusions of Law and entering judgment in favor of Stryker.  On appeal, this court determined that the district court had incorrectly con-

strued the "means for allowing the pin to slide" limitation as being subject to 35 U.S.C. § 112, paragraph 6, reversed the judgment, and remanded the case for further proceedings. *TriMed I*, 514 F.3d at 1261-62.

On remand, Stryker moved for summary judgment of invalidity on the ground that an article entitled "Treatment of Complex Intra-Articular Distal Radius Fractures" by Stephen J. Leibovic, M.D. and William B. Geissler, M.D. ("the Leibovic article") and U.K. Patent Application No. GB 2 245 498 A listing Eugen May as the inventor ("the May application") each anticipates the asserted claims. Stryker argued that images in the Leibovic article show a fracture set using an arrangement of pins and plates with holes that satisfies the limitations of the asserted claims. Regarding the May application, Stryker contended that the application discloses a plate that has holes for screws and smaller holes for guide wires. Stryker asserted that the May application is anticipatory because the guide wire, plate, and guide wire hole disclosed in the May application perform the same functions as the plate, fixation pin, and hole of the asserted claims of the '839 patent.

Stryker also argued that the claims at issue would have been obvious in light of either the Leibovic article or the May application combined with an article entitled "Percutaneous Kirschner-Wire Fixation of Colles Fractures" by Gary J. Clancey, M.D. ("the Clancey article"). Stryker characterized the Clancey article as disclosing the conventional percutaneous pinning method previously discussed. Stryker asserted that TriMed simply combined known elements from these references and employed a logical, commonsense solution to the problem of stabilizing pins against displacement—selecting a prior art plate with holes of the appropriate size relative to the pin. Stryker also argued that combining the elements dis-

closed in either the Leibovic article or the May application with the pinning technique disclosed in the Clancey article would achieve predictable results. To support these arguments, Stryker relied on the declaration of its expert, Dr. Barry Feinberg.

In response, TriMed filed a memorandum contesting nearly every aspect of Stryker's motion for summary judgment. According to TriMed, the Leibovic article describes setting a first fragment using plates and screws in the conventional open reduction and internal fixation method described above. TriMed claimed that the article also discusses repositioning a separate second fragment within the articular joint and inserting K-wires underneath the repositioned fracture to prevent the fracture from collapsing. TriMed alleged that the K-wires do not pass through the holes in the plate used to set the first fragment and therefore neither the disclosed holes nor the disclosed wires meet the limitations of the asserted claims. TriMed argued that the May application fails to teach the claimed device because the disclosed guide wires are temporarily inserted into holes in the plate to maintain alignment during surgery and do not perform the functions of the claimed fixation pin. Moreover, TriMed argued that the disclosed holes do not prevent compression across the fracture or stabilize the near end of a pin as required by the claims.

TriMed also challenged Stryker's claim that the combination of either the May application or the Leibovic article with the Clancey article rendered the asserted claims obvious, arguing that neither of the proposed combinations would result in the claimed invention. TriMed further contended that the invention was not a logical, commonsense solution to a known problem, nor were the results achieved by the invention predictable. Finally, TriMed presented evidence of secondary consid-

erations of nonobviousness that showed that the orthopedic industry was initially skeptical of the invention but later praised it. TriMed submitted a declaration from its expert, Dr. Robert Medoff, in support of these contentions.

In deciding Stryker's motion, the district court again simply signed Stryker's Uncontroverted Statement of Facts and Conclusions of Law without any changes other than crossing out the anticipation section and granted summary judgment of invalidity in favor of Stryker. TriMed timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II.   DISCUSSION

On appeal, TriMed argues that the district court improperly resolved genuine issues of material fact in favor of Stryker and urges us to reverse the district court's grant of summary judgment and remand this matter with an instruction to reassign the case to a different judge. Stryker argues in opposition that none of the material facts are in dispute and that the district court properly determined that the asserted claims would have been obvious. Stryker contends that we can also uphold the district court's judgment on anticipation grounds.

Stryker also complains that TriMed improperly filed an expert declaration after the district court barred TriMed from filing expert reports. TriMed contends that Stryker's expert is not one of ordinary skill in the art. Although these arguments were raised before the district court, the court did not address them. Because, as a general matter, "a federal appellate court does not consider an issue not passed upon below," *Singleton v. Wulff*, 428 U.S. 106, 120 (1976), we decline to address these arguments in the first instance and refer them to the district court for consideration on remand.

We begin by addressing the parties' invalidity contentions and then turn to Stryker's request to reassign this matter.

## A. Invalidity

We review de novo the district court's grant of summary judgment, "reapplying the standard applicable at the district court." *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing summary judgment, the evidence is viewed "through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006). Because patents are presumed valid, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *Id.*

TriMed argues that the district court improperly resolved a number of material factual disputes in favor of Stryker. These disputes include the following: (1) whether the guide wire discussed in the May application is a fixation pin; (2) whether the holes disclosed in either the Leibovic article or the May application stabilize the near end of a fixation pin against displacement and prevent compression across a fracture; and (3) whether the Leibovic article shows a K-wire passing through a plate. TriMed further contends that the district court ignored its evidence of secondary considerations of nonobviousness.

TriMed also takes issue with the characterization of the claimed subject matter as a commonsense, predictable combination of known elements. TriMed contends that the functions of the claimed holes and plates are fundamentally different from the functions of the holes and plates described in the asserted prior art references. According to TriMed, prior art plates acted as load-bearing members to support fractured bone fragments, whereas the sole function of the claimed plate is to provide holes for the pin. The claimed holes allow the pin to slide axially while preventing compression across the fracture and stabilize the near end of the pin against displacement in the plane of the plate—functions that TriMed claims were not performed by prior art holes. TriMed contends that the results achieved by the claimed invention would not have been predictable because it was unknown at the time of the invention whether holes could perform these functions.

In response, Stryker argues that the '839 patent claims a predictable combination of known prior art elements that operate according to their established functions. As noted above, it was known at the time of the invention that screws are ill-suited to attach a plate to small or osteoporotic bone fragments and that pins are a more appropriate means to fixate these kinds of fragments. Stryker reasons that this knowledge would have led one of skill in the art at that time to modify the open reduction and internal fixation method by replacing the screw used to attach the plate to the fractured bone fragment with a pin. It was also well-known at the time of the invention that pins tended to bend or be displaced, which could impede healing. Stryker argues that common sense and logic would have suggested selecting a plate with holes of an appropriate size to prevent the pin from bending or moving. Because TriMed does not dispute that

these fixation methods, and their associated advantages and disadvantages, were known at the time of the invention, Stryker contends that the district court correctly determined that there are no genuine issues of material fact and properly granted summary judgment of invalidity in Stryker's favor.

We agree with TriMed. A patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Whether the claimed subject matter would have been obvious at the time of invention to one of ordinary skill in the pertinent art is a question of law based on underlying facts. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1348 (Fed. Cir. 2000). The relevant factual inquiries include the oft-cited *Graham* factors:

> (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations . . ..

*Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). Summary judgment of obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

When determining whether a patent claiming a combination of known elements would have been obvious, we

"must ask whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.* at 417. This inquiry is factual in nature. *Cf. Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) (explaining that whether there is "a reasonable expectation of success in making the invention via" a combination of prior art elements is a question of fact). Answering this question usually entails considering the "interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *KSR*, 550 U.S. at 418. What a reference teaches, whether there is a trend or demand in the relevant marketplace or design community, the background knowledge of one of skill in the art— these are all questions reserved for the finder of fact. *See Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006) ("[W]hat a reference teaches is a question of fact . . . ."); *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 882 (Fed. Cir. 1998) ("Whether the prior art discloses a 'trend' is a question of fact."); *Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1363 (Fed. Cir. 1999) (concluding that a genuine issue of material fact existed regarding the background knowledge of one of skill in the art). These factual questions are not separate and distinct from those set out in *Graham*; rather, they fall comfortably within those familiar categories of factual inquires. *See, e.g.*, *Dystar*, 464 F.3d at 1360 (noting that what the prior art teaches is a subsidiary determination of the scope and content of the prior art).

Many of these factual questions are in dispute here. For instance, the parties dispute what the asserted prior

art teaches. Specifically, the parties disputed the following: (1) whether either the May application or the Leibovic article discloses the claimed holes; (2) whether the May application discloses the claimed fixation pin; and (3) whether the Leibovic article shows a K-wire passing through a plate. *Compare* Decl. of Barry Feinberg in Supp. of Stryker's Mot. For Summ. J. 8-9 ("The 1992 May Patent Application discloses bores (holes) (8) [that] are [the claimed holes].") ("*Feinberg Decl.*") *with* Decl. of Robert Medoff, M.D. in Supp. of TriMed's Opp'n to Stryker's Mot. for Summ. J. 7 ("Because the plate [in the May application] is secured with screws . . . the holes do not prevent compression across the fracture . . . . Because there is no disclosure of the size of the holes, it . . . does not address[] stabilizing the near end of the pin.") ("*Medoff Decl*"); *compare Feinberg Decl.* 8 (explaining how Figure 4C of the Leibovic article discloses the claimed holes) *with Medoff Decl.* 9 (contending that the Leibovic article does not teach the claimed holes); *compare Feinberg Decl.* 6-7 (opining that the guide wires disclosed in the May application are fixation pins) *with Medoff Decl.* 6 (stating that the guide wires disclosed in the May application are not fixation pins); *compare Feinberg Decl.* 7 (stating that Figure 4C of the Leibovic article shows the near end of a pin engaging a hole in a plate) *with Medoff Decl.* 8 (contending that the Leibovic article does not show a K-wire passing through a plate). The parties also disputed whether the claimed invention achieves predictable results and uses prior art elements according to their established functions. *Compare Feinberg Decl.* 16 ("[I]t would have been obvious . . . to combine the [asserted references] because the combination of these references achieves predictable results. . . . When the prior art pins and the prior art plates with holes are combined . . . the pins and plates with holes function in a predictable manner.") *with Medoff Decl.* 11 ("The results were not predict-

able, as stabilizing the near end of the pin with holes . . . was so different than any procedure wrist surgeons had previously performed. . . . [T]he '839 patented Pin Plate was not simple.  To the contrary . . . the mechanics of fixation [are] completely different from that of screws, plates, and the compressive forces used to fix fractured fragment[s].").  Stryker's argument that these disputes are immaterial ignores how the resolution of these questions informs the obviousness inquiry in this case.

Stryker attempts to circumvent these genuine issues of material fact by suggesting that the claimed subject matter would have been obvious because it is, at least in part, a commonsense solution to a known problem.  As we explained in *Perfect Web Technologies, Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009), an obviousness analysis "may include recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion."  Although reliance on common sense does not require a specific evidentiary basis, "on summary judgment, to invoke 'common sense' or any other basis for extrapolating from prior art to a conclusion of obviousness, a district court must articulate its reasoning with sufficient clarity for review."  *Id.* at 1330.  *See also In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.").  While Rule 52(a)(3) of the Federal Rules of Civil Procedure contains the pertinent qualification that a "court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56," that rule "does not relieve a court of the burden of stating its reasons somewhere in the record when its underlying holdings would otherwise be ambiguous or inascertainable [sic]," *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078,

1081 n.3 (9th Cir. 2000) (citation omitted). "Assuredly, to know the reasoning a district court used in deciding to grant summary judgment facilitates the task of a reviewing court, and there does exist a risk in complicated cases of an unnecessary reversal if the logic that resulted in the grant of summary judgment cannot be discerned." *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F2d. 1015, 1020 (Fed. Cir. 1985), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Both the record in this case and the order granting Stryker's motion for summary judgment are devoid of such reasoning. Instead of supporting its obviousness analysis with cogent reasoning, the order merely states that "[a] common sense [sic] solution to this problem [i.e., pin migration] involves stabilizing the pin against . . . displacement . . . [and] the logical solution would be to select a prior art plate that had holes with an appropriate diameter . . . ." Order Granting Stryker's Mot. For Summ. J. of Invalidity 14. Neither the record before us nor the order of the district court explains why one of ordinary skill in the art at the time of the invention would have found replacing a cast normally used to stabilize a pin with a subcutaneous metal plate to be a logical, commonsense solution to this problem. Merely saying that an invention is a logical, commonsense solution to a known problem does not make it so.

The record also fails to explain why the district court summarily dismissed the evidence of secondary considerations of nonobviousness submitted by TriMed. We have repeatedly held that evidence of secondary considerations must be considered if present. *See, e.g., Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) ("Our precedents clearly hold that secondary considerations, when present, must be considered in determining obviousness."). There is no indication in the record that, as

required by our precedent, the court considered at all the evidence of secondary considerations offered by TriMed.

Stryker also argues that the Leibovic article and the May application each anticipates the asserted claims. "[I]nvalidity by anticipation requires that the four corners of a single[] prior art document describe every element of the claimed invention, either expressly or inherently." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). Whether a prior art reference anticipates a patent claim is a question of fact. *Id.* at 1281. As we discussed above, there are genuine issues of material fact regarding whether either of these references teaches all of the limitations recited in claim 1, the claim from which the other asserted claims depend.

Because there are genuine issues of material fact and because the record fails to provide a reasoned basis to support the district court's grant of summary judgment, we conclude that the court's grant of summary judgment of invalidity was inappropriate and must be reversed.

## B. Reassignment

We evaluate a request to reassign a matter to a different judge under the law of the relevant regional circuit, *Research Corp. Technologies. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008), here, the Ninth Circuit. In the Ninth Circuit, reassignment is appropriate if personal bias or unusual circumstances are shown. *Smith v. Mulvaney*, 827 F.2d 558, 562 (9th Cir. 1987). When determining whether unusual circumstances exist, the Ninth Circuit considers the following factors:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to

be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 563.

We conclude that reassignment is warranted here. The district court has now been reversed twice after entering summary judgment against TriMed, in both instances simply signing Stryker's proposed statement of law and facts relevant to the decided issues, a disfavored practice in the Ninth Circuit, *see Living Designs, Inc. v. E.I. Dupont De Nemours & Co.*, 431 F.3d 353, 373 (9th Cir. 2005) (noting that the Ninth Circuit has "criticized district courts that 'engaged in the "regrettable practice" of adopting the findings drafted by the prevailing party wholesale.'" (citation omitted)). Although mindful of the burden reassignment places on judicial resources, given the particular circumstances present here, we are convinced that reassigning this matter to a different judge is necessary to preserve the appearance of justice. Thus, pursuant to our supervisory authority under 28 U.S.C. § 2106, we remand this case to the Chief Judge of the United States District Court for the Central District of California to determine the reassignment of this case to a different district judge.

### III.   CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment of invalidity and remand for reassignment of this case to a different district judge.

**REVERSED** and **REMANDED**